**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**BLUEFIELD DIVISION**

NORMA J. CRISCO,                          )
                                          )
         **Plaintiff,**                )
                                          )
v.                                        )        **CIVIL ACTION NO. 1:14-28841**
                                          )
                                          )
                                          )
MICHAEL J. ASTRUE,                        )
**Commissioner of Social Security,**      )
                                          )
         **Defendant.**                )

**PROPOSED FINDINGS AND RECOMMENDATION**

This is an action seeking review of the decision of the Commissioner of Social Security

denying Plaintiff's application for Disability Insurance Benefits (DIB), under Title II of the Social

Security Act, 42 U.S.C. §§ 401-433. By Standing Orders entered December 2, 2014, and January

5, 2016 (Document No. 4 and 25.), this case was referred to the undersigned United States

Magistrate Judge to consider the pleadings and evidence, and to submit Proposed Findings of Fact

and Recommendation for disposition, all pursuant to 28 U.S.C. § 636(b)(1)(B). This case presently

is pending before the Court on the parties' cross-Motions for Judgment on the Pleading. (Document

Nos. 19 and 23.), and Plaintiff's Response. (Document No. 24.)

The Plaintiff, Norma J. Crisco (hereinafter referred to as "Claimant"), filed an application for

DIB on March 14, 2005 (protective filing date),[1] alleging disability as of December 31, 1995, due to

---

[1] Claimant also filed on March 14, 2005, an application for Supplemental Security Income (SSI) under Title XVI of
the Social Security Act, 42 U.S.C. §§ 1381-1383f. (Tr. at 527.) The Social Security Administration ("SSA")
determined that Claimant was disabled, with an onset of disability of March 1, 2005. (*Id.*) Although Claimant met the
medical requirements for SSI, her income and resources exceeded the allowable Title XVI amounts due to a life
insurance policy, and therefore, Claimant was not entitled to any SSI cash benefits. (Tr. at 489, 527.)

"arthritis right knee, depression, high blood pressure, [and] hormonal problems."[2] (Tr. at 14, 92, 94-97, 136.) The claim was denied initially and upon reconsideration. (Tr. at 34-35, 36-39, 56-58, 60-62.) On January 30, 2006, Claimant requested a hearing before an Administrative Law Judge (ALJ). (Tr. at 54.) The hearing was held on December 20, 2006, before the Honorable Robert S. Habermann. (Tr. at 486-511.) By decision dated July 18, 2007, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 14-21.) The ALJ's decision became the final decision of the Commissioner on April 30, 2008, when the Appeals Council denied Claimant's request for review. (Tr. at 6-9.) On June 16, 2008, Claimant filed an action in this Court seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g). (Document No. 2, Crisco v. Colvin, Civil Action No. 1:08-cv-00839 (S.D. W.Va. Nov. 6, 2008.) The parties agreed to remand the case for further development and evaluation. (Tr. at 542, 627; Document No. 15, Civil Action No. 1:08-cv-00839.) By Memorandum Opinion and Order entered November 6, 2008, the undersigned remanded the matter pursuant to sentence four of 42 U.S.C. § 405(g). (Tr. at 541, 628; Document Nos. 16 and 17, Civil Action No. 1:08-cv-00839.)

By Notice dated December 8, 2008, the Appeals Council remanded the case to the ALJ to resolve an apparent conflict "between the decisional step one and step four findings regarding whether the [C]laimant's job as a receptionist constituted substantial gainful activity and further develop the record with respect to that job during the relevant period." (Tr. at 543-46.) A hearing

---

[2] Claimant did not allege a disabling mental impairment until August 2, 2005, when she asserted on her form Disability Report – Appeal, that she suffered from depression and had difficulty concentrating. (Tr. at 121.) She also alleged that her physical condition had worsened because her knees went out and she fell. (Tr. at 121.) On her form Disability Report - Appeal, dated January 23, 2006, Claimant alleged the following additional disabling impairments: "It is hard for me to stand, sit or walk for long periods of time. I am stressed out all of the time. I have a hard time sleeping." (Tr. at 100.) She further alleged that her condition had worsened in that she experienced "a lot more pain in [her] right knee." (*Id.*)

was held on June 18, 2009, before ALJ Habermann. (Tr. at 563-83.) By decision dated August 5, 2009, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 527-34.) The ALJ's decision became the final decision of the Commissioner on March 31, 2011, when the Appeals Council denied Claimant's request for review. (Tr. at 512-14, 629-31.) Claimant filed an action seeking judicial review of the administrative decision on April 11, 2011, pursuant to 42 U.S.C. § 405(g). (Document No. 2, 1:11-cv-00243.) By Order entered August 15, 2011, Civil Action No. 1:11-cv-00243, was consolidated with Civil Action No. 1:08-cv-00839. (Document No. 25, Civil Action No. 1:08-cv-00839.) By Judgment Order and Memorandum Opinion Order entered on September 28, 2012, and March 8, 2013, respectively, the matter was remanded for consideration of Dr. Robertson's August 18, 2009, letter and July 10, 2007, progress report. (Tr. at 632-47; Document Nos. 30 and 31, Civil Action No. 1:08-cv-00839.)

By Notice dated June 11, 2013, the Appeals Council remanded the case to the ALJ "for further proceedings consistent with the order of the court." (Tr. at 648-50.) A hearing was held on December 2, 2013, before ALJ Benjamin R. McMillion. (Tr. at 691-722.) By decision dated December 26, 2013, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 596-605.) The ALJ's decision became the final decision of the Commissioner on October 23, 2014, when the Appeals Council denied Claimant's request for review. (Tr. at 584-87.) The Appeals Council specifically addressed Claimant's allegations on appeal as follows:

> You argued that the ALJ's finding that the opinion of Philip Robertson, M.D. is unsupported and contradicted by the record is totally at odds with the District Court's finding that Dr. Robertson's [opinion] is not contradicted by the record. You also argued that the ALJ did not follow the instructions of the memorandum opinion from March 8, 2013 and did not discuss the factors enumerated in 20 CFR 404.1527 in weighing the opinion of a treating source. The District Court found that Dr. Robertson's opinion may reasonably have caused the ALJ to find that the claimant was disabled prior to the expiration of her insured status and remanded the case for further consideration of the opinion. The ALJ in the December 2013

3

hearing decision provided a sufficient explanation for rejecting the opinion in accordance with 20 CFR 404.1527 and the memorandum opinion from the District Court. The treatment notes from Dr. Robertson related to the period at issue were lost, but the ALJ noted that the treatment notes from the period at issue from William, Harden, M.D., which cover the period from 1986 to 1995, make no mention of the allegedly disabling accident that occurred in 1990. The claimant discussed stress from her marriage with Dr. Harden and other physical impairments but made no mention of any inpatient psychiatric treatment or emotional distress caused by the 1990 accident. In fact, Dr. Harden reported in April 1992, that psychologically the claimant is back to normal and has no complaints at all (Exhibit 2F, page 57). Dr. Harden's treatment notes are inconsistent with Dr. Robertson's opinion of a disabling impairment. The ALJ further noted that in the time after the claimant's date last insured, there was no evidence of a mental health impairment until 2001, six years after the date last insured.

Dr. Robertson's 2006 letter that the claimant was hospitalized for her psychiatric impairments in 1992 and 1995 is inconsistent with his admission notes from 2002 where he wrote that the claimant had no prior inpatient psychiatric hospitalizations (Exhibit 1F). The ALJ further discussed the inconsistent statements the claimant made regarding her work history. The ALJ noted that although the claimant reported she became disabled following a car accident in November 1990, there is evidence that the claimant was not working before that date for unrelated reasons. The claimant only earned $325 in 1989 and nothing in 1990. Furthermore, the claimant then had earnings at the substantial gainful activity level in 1992 and 1993. The claimant testified that she went to Dr. Robertson every day in 1995, but Dr. Robertson wrote that he only saw the claimant on average once every one to two months (Exhibit 40F). The ALJ also noted that despite alleging a disabling mental impairment the claimant was still able to attend High School events for her son. In rejecting Dr. Robertson's opinion, the ALJ further stated that because Dr. Robertson's treatment notes prior to 2001 were lost, the remaining medical evidence from before the claimant's date last insured and the [sic] her credibility become more important, and those factors do not weigh in the claimant's favor.

You also argued that the ALJ did not fulfill his obligation to attempt a resolution of his perceived conflict with Dr. Robertson's credibility. Dr. Robertson was already given the opportunity to clarify his 2006 opinion that the claimant became disabled in 2001 (Exhibit 34F). The ALJ found the 2009 opinion to be unsupported by the evidence.

After reviewing the record, including the hearing testimony and the exceptions, the Appeals Council concludes that the hearing decision is supported by substantial evidence and consistent with applicable regulations. Furthermore, the hearing decision complied with the District Court Order and the Appeals Council remand order.

4

(Tr. at 584-85.) Claimant filed the present action seeking judicial review of the administrative decision on November 21, 2014, pursuant to 42 U.S.C. § 405(g). (Document No. 2.)

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(I), a claimant for disability benefits has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520, 416.920 (2013). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. §§ 404.1520(d), 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience.   20 C.F.R. §§ 404.1520(f), 416.920(f) (2013). The

Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the Social Security Administration "must follow a special technique at every level in the administrative review process." 20 C.F.R. §§ 404.1520a(a) and 416.920a(a). First, the SSA evaluates the claimant's pertinent symptoms, signs and laboratory findings to determine whether the claimant has a medically determinable mental impairment and documents its findings if the claimant is determined to have such an impairment. Second, the SSA rates and documents the degree of functional limitation resulting from the impairment according to criteria as specified in 20 C.F.R. §§ 404.1520a(c) and 416.920a(c). Those sections provide as follows:

> *(C) Rating the degree of functional limitation.* (1)Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation. We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other treatment.
>
> (2) We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis. Thus, we will consider such factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in which you are able to function. See 12.00C through 12.00H of the Listing of Impairments in appendix 1 to this subpart for more information about the factors we consider when we rate the degree of your functional limitation.
>
> (3) We have identified four broad functional areas in which we will rate the degree of your functional limitation: Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. See 12.00C of the Listings of Impairments.
>
> (4) When we rate the degree of limitation in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace), we will use the following five-point scale: None, mild, moderate, marked, and extreme. When we rate the degree of limitation in the fourth functional area (episodes of decompensation), we will use the following four-point scale: None, one or two, three,

6

four or more. The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

Third, after rating the degree of functional limitation from the claimant's impairment(s), the SSA determines their severity. A rating of "none" or "mild" in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace) and "none" in the fourth (episodes of decompensation) will yield a finding that the impairment(s) is/are not severe unless evidence indicates more than minimal limitation in the claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1520a(d)(1) and 416.920a(d)(1).[3] Fourth, if the claimant's impairment(s) is/are deemed severe, the SSA compares the medical findings about the severe impairment(s) and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment(s) meet or are equal to a listed mental disorder. 20 C.F.R. §§ 404.1520a(d)(2) and 416.920a(d)(2). Finally, if the SSA finds that the claimant has a severe mental impairment(s) which neither meets nor equals a listed mental disorder, the SSA assesses the Claimant's residual functional capacity. 20 C.F.R. §§ 404.1520a(d)(3) and 416.920a(d)(3). The Regulation further specifies how the

---

[3] 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04, provides that affective disorders, including depression, will be deemed severe when (A) there is medically documented continuous or intermittent persistence of specified symptoms and (B) they result in two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence or pace; or repeated episodes of decompensation , each of extended duration or (C) there is a medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities with symptoms currently attenuated by medication or psychosocial support and (1) repeated extended episodes of decompensation; (2) a residual disease process resulting in such marginal adjustment that a minimal increase in mental demands or change in the environment would cause decompensation; or (3) a current history of 1 or more years' inability to function outside a highly supportive living arrangement, and the indication of a continued need for such an arrangement.

findings and conclusion reached in applying the technique must be documented at the ALJ and Appeals

Council levels as follows:

> At the administrative law judge hearing and the Appeals Council levels, the written decision issued by the administrative law judge and the Appeals Council must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

20 C.F.R. §§ 404.1520a(e)(2) and 416.920a(e)(2).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because

she had not engaged in substantial gainful activity since the alleged onset date, December 31,

1995. (Tr. at 598, Fining No. 2.) Under the second inquiry, the ALJ found that Claimant had the

following medically determinable impairments: "anxiety, post-traumatic stress disorder (PTSD),

and depressive disorder," but found that she did not suffer from any severe impairment or

combination of impairments. (Tr. at 598-99, Finding Nos. 3 and 4.) On this basis, benefits were

denied. (Tr. at 605, Finding No. 5.)

<u>Scope of Review</u>

The sole issue before this Court is whether the final decision of the Commissioner denying the

claim is supported by substantial evidence. In <u>Blalock v. Richardson</u>, substantial evidence was defined

as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

<u>Blalock v. Richardson</u>, 483 F.2d 773, 776 (4th Cir. 1972) (quoting <u>Laws v. Celebrezze</u>, 368 F.2d 640,

642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is not supported by substantial evidence.

Claimant's Background

Claimant was born on October 2, 1950, and was 58 years old at the time of the supplemental administrative hearing, June 18, 2009. (Tr. at 94, 490.) Claimant had a high school education and was able to communicate in English. (Tr. at 136, 141, 490.) In the past, she worked as a telephone operator, receptionist, and secretary. (Tr. at 21, 137-38, 490-93.)

The Medical Record

The Court has reviewed all the evidence of record, including the medical evidence, and will discuss it below in relation to Claimant's arguments.

The record demonstrates that on Wednesday, November 21, 1990, Claimant was involved in an automobile accident, which caused the death of an elderly couple. (Tr. at 568-69, 601.) Claimant was hospitalized and upon discharge, began seeing Dr. Phillip Robertson, a psychiatrist, for her emotional problems stemming from the accident, two days following the accident, on Friday, November 23, 1990. (Id.)

Prior to the accident, Claimant treated with Dr. Harden, and the record reflects her treatment from December 5, 1986, until June 10, 2002. (Tr. at 191-226, 600-01.) Claimant reported feelings of nervousness and significant stress from work as early as December 30, 1986. (Tr. at 226.) On May 12,

9

1988, Claimant reported a lot of difficulties at home and with her in-laws. (Tr. at 224.) Dr. Harden suggested that Claimant consider Ativan. (Id.) On August 10, 1988, February 14, 1989, and August 28, 1990, Dr. Harden noted that overall, Claimant was "doing well" and "doing quite well," though there were no specific references to her mental condition. (Tr. at 223.) On October 12, 1989, Dr. Harden prescribed Ativan. (Id.) Dr. Harden's treatment notes did not reflect Claimant's accident on November 21, 1990.

Following the accident, Dr. Harden noted on November 26, 1990, that an appointment was made for Claimant to see Dr. Robertson. (Tr. at 222.) On April 23, 1992, Dr. Harden noted that Claimant was "doing pretty good" and "psychologically, she [was] back to normal." (Tr. at 221.) Claimant denied any complaints and Dr. Harden noted that he would examine her every six months. (Id.) Claimant reported on November 3, 1993, that she had some tough times dealing with her husband's infidelity and was taking increased Ativan. (Tr. at 220.) Claimant reported continued nervousness on May 4, 1994, that resulted from continued marital difficulties. (Tr. at 219.) She was given a week's supply of Buspar and Dr. Harden recommended that she see a marriage counselor. (Id.) Claimant returned for a follow-up exam on September 14, 1994, and reported that she was "doing pretty good" and had reconciled with her husband, though things "will never be the same." (Id.)

Hospital treatment records from April 30, 2002, indicate that Claimant presented to the emergency room with complaints of depression with suicidal ideation. (Tr. at 432-56.) Dr. Robertson noted Claimant's reports of outpatient counseling in 1990 after she accidentally killed two people in a motor vehicle accident, but that she had no inpatient psychiatric treatment. (Tr. at 434.) Dr. Robertson noted that she had been under the care of Dr. Harden, who had prescribed Zoloft 100mg, and had previously prescribed Prozac and Xanax 2mg. (Id.) Dr. Robertson noted that Claimant had experienced then recent family stressors, poor sleep with disruptive nightmares,

poor appetite with a thirty pound weight loss, a loss of energy and interest, anxiousness and restlessness, and suicidal ideation with plan. (Id.) He diagnosed major depressive disorder, recurrent episode, moderate severity; anxiety disorder, not otherwise specified; family circumstance problem; and dependent personality traits. (Tr. at 436.) She was discharged after consultation and medication, in improved and stable condition with no suicidal thoughts. (Tr. at 444-46.)

In a letter to Claimant's attorney dated September 6, 2006, Dr. Robertson reported that he had treated Claimant since the early nineties "for emotional problems which have rendered her disabled from employment." (Tr. at 419, 473.) He noted that Claimant relayed on July 12, 2006, that she last worked as a secretary for her husband's business in 2001, and had stopped working at that time because she "couldn't handle it." (Id.) Dr. Robertson opined that Claimant "has been disabled since that time by chronic depression, anxiety, irritability, poor concentration, lack of energy, inability to cope with stress, recurrent post-traumatic stress disorder symptoms stemming from a fatal motor vehicle accident in 1990, and chronic knee problems." (Id.)

On December 19, 2006, Dr. Robertson stated that Claimant had been his patient since 1990, "for treatment soon after a traumatic automobile accident." (Tr. at 472.) He noted that Claimant was hospitalized for two weeks in 1992, following a suicidal ideation with a plan. (Id.) Claimant hospitalized herself in 1995, for the same reason. (Id.) She was last hospitalized in 2002. (Id.) Dr. Robertson completed a form Medical Source Statement of Ability to Do Work-Related Activities (Mental), on January 24, 2006. (Tr. at 476-78.) He opined that Claimant had marked limitations in her ability to complete a normal workday or workweek, perform at a consistent pace, respond appropriately to work pressures in a normal work setting, and perform activities within a schedule, maintain regular attendance, and be punctual. (Tr. at 476-77.) He assessed moderate limitations in her ability to maintain

attention and concentration for extended periods and sustain an ordinary routine without special supervision. (Id.) Dr. Robertson also noted that Claimant's impairments would cause her to be absent from work more than three times a month. (Tr. at 478.)

In a letter to Claimant's attorney dated June 15, 2007, Dr. Robertson reported that Claimant had struggled with post-traumatic stress disorder, depression, and anxiety, since the accident in 1990. (Tr. at 482.) He noted that she last worked as a secretary in 2001, but quit because she was "unable to handle it." (Id.) He opined that "[h]er ability to pursue employment is impaired by chronic depression, anxiety, irritability, poor concentration, and poor tolerance for stress. She remains chronically symptomatic to the degree that in my opinion she is unable to engage in sustained gainful employment." (Id.) On August 3, 2007, Dr. Robertson sent a letter to Claimant's attorney clarifying that Claimant "was incapable fo working competitively in the job market, 8 hours a day/5 days a week since the accident of 1990." (Tr. at 483.)

Claimant also submitted Dr. Robertson's treatment notes from December 5, 2006, through June 10, 2009. (Tr. at 550-62.) The notes reflect that on July 10, 2007, Claimant continued to deal with the deaths of the two people she accidentally hit and killed with her car in 1990. (Tr. at 560.)

On March 15, 2007, Dr. Gary T. Bennett, Ph.D., a licensed psychologist, sent a letter to ALJ Habermann, and indicated that Claimant had a long history of mental illness that dated back to the motor vehicle accident in 1990. (Tr. at 479-80.) He noted that Claimant began treatment with Dr. Robertson a few days following the accident and continued treatment since then. (Tr. at 479.) He noted that she also saw Dr. Raza, who prescribed psychotropic drugs. (Id.) Dr. Bennett noted that Claimant's record consistently documented the presence of symptoms of depression and anxiety, and opined that Claimant met the "A" criteria for an affective disorder, or for major depressive disorder. (Id.) Dr. Bennett however, opined that regarding the "B" criteria for Listings

12.04 and 12.06, Claimant had mild limitations in daily activities and moderate limitations in maintaining social functioning, concentration, persistence or pace.  (Tr. at 480.) He concluded therefore, that Claimant did not meet a Listing level impairment based solely on her mental illness, but that when combined with her psychological impairment, "her functioning would likely fall under the Marked level of impairment necessary for her to meet or equal a listing in all three areas." (Id.) Notwithstanding this opinion, he further opined that it appeared that the level of Claimant's condition "has been fairly chronic since 2001 when she stopped working." (Id.)

At the supplemental administrative hearing on June 18, 2009, the ALJ acknowledged that Dr. Robertson was unable to locate the treatment records prior to Claimant's date last insured, December 31, 1995. (Tr. at 578-79.) The ALJ noted Dr. Robertson's letter dated September 6, 2006, in which he stated that he was unable to locate the records. (Tr. at 579.) The ALJ therefore, required something more specific. (Id.) He asked Claimant's attorney to obtain from Dr. Robertson more information regarding his treatment from the date of the accident until the date last insured. (Id.) Specifically, he wanted to know how often he and his staff saw Claimant from 1990 to 2001, and what were his bases and underlying rationale for his opinions of disability. (Tr. at 528, 578, 580-81.) Claimant explained that when she first started seeing Dr. Robertson, he was located in Princeton, West Virginia. (Tr. at 581.) She explained that he had since moved to two different locations, and that he placed his old medical records in his house, and that he could not locate her records. (Tr. at 581-82.)

In response to the ALJ's inquiry, Claimant sent Dr. Robertson a letter dated June 22, 2009, in which she explained the ALJ's concerns and asked Dr. Robertson the following questions:

- What happened to the missing records?

- Approximately how often was Jeanie Crisco seen between 1990 and 2001?

- Is it your belief that her emotional condition today is the direct cause of the accident she suffered in November, 1990?

- While you have repeatedly opined that Jeanie is incapable of sustained employment, the Judge wants to know why (i.e., inability to cope with any stress, complete loss of interest in activities, entertainment, etc., profound depression, frequent crying spells, etc.)

In a nutshell, he wants you to tie everything back to the automobile accident in November, 1990, provide an opinion as to disability and then explain the basis of that opinion.

(Document No. 26, Exhibit A, Civil Action No. 1:08-00839.) Dr. Robertson did not respond to

Claimant's attorney's letter prior to the ALJ's decision issued on August 5, 2009. (Tr. at 527-34.)

In his decision, the ALJ gave little weight to Dr. Robertson's opinion that Claimant was disabled

as of December 31, 2005. (Tr. at 532.) The ALJ noted that this matter posed a dilemma and found

that

On the one hand it is reasonable to assume that the traumatic events surrounding the [C]laimant's 1990 accident could have resulted in significant emotional issues which impacted her functioning during the period on or before her date last insured. This is suggested by Dr. Robertson's 2006 narrative statements and medical source statement - mental, and the by the [C]laimant's testimony. On the other hand, the little objective evidence available for the period 1991 - 1995 (exhibit 2F, pp. 57 - 60) makes no mention of any debilitating and disabling mental health problems, or any diagnosis of a mental impairment, and an individual's onset date of disability must be fixed based on the facts and can not be inconsistent with the medical evidence of record (SSR 83-20).

(Tr. at 532.)

In a letter dated August 18, 2009, approximately two weeks after the ALJ had determined

that Claimant was not disabled prior to December 31, 1995, Dr. Robertson provided Claimant's

attorney with the requested information. (Tr. at 522-23.) Dr. Robertson explained that Claimant's

missing records from 1990 through 2001, could not be located after the Springhaven, Inc. Clinic

closed. (Tr. at 522.) He stated that the records either were stored by Springhaven or placed in one of several boxes given to him, which may have been lost or damaged in a basement flood. (Id.) Regarding his care of Claimant, Dr. Robertson stated that she was seen by him for outpatient psychiatric follow-up with medication checks once every one to two months for the first two years and once every three to four months, thereafter. (Id.) Claimant also saw John Terry, a psychologist, for psychotherapy. (Id.) Claimant was last seen at Springhaven on November 19, 2003, and began treatment at Psychiatric Associates of the Virginias on March 2, 2004. (Id.) Dr. Robertson explained that Claimant's psychiatric conditions consisted of a post-traumatic stress disorder, depression, and anxiety, and that these conditions were caused directly by the automobile accident in November, 1990. (Id.) He stated that Claimant's emotional condition subsequently was exacerbated by various family and situational stressors and deaths of family members. (Id.) Dr. Robertson opined that Claimant "is disabled from sustained gainful employment," and noted that she worked only sporadically for eight years prior to quitting altogether in 2001, because she could not handle the stress. (Tr. at 523.) He further opined that Claimant "is disabled by chronic varying degrees of depression, anxiety, low energy, inability to tolerate stress, and resulting inability to maintain concentration, persistence or pace such that she is unable to meet competitive standards for sustained employment." (Id.)

Claimant submitted Dr. Robertson's August 18, 2009, letter to the Appeals Council, who determined that the letter was insufficient "to establish that the [C]laimant was unable to perform all work activity as of November 1990, as alleged." (Tr. at 513.)

Claimant's Challenges to the Commissioner's Decision

Claimant alleges that the Commissioner's decision is not supported by substantial evidence

because the ALJ erred at step two of the sequential analysis when he failed to find that she had any severe impairments. (Document No. 19 at 6.) Specifically, Claimant asserts that the ALJ "misconstrued evidence, he created conflict where there was none, he looked at individual exhibits in a vacuum, and he clearly had not reviewed the transcripts of the earlier proceedings, specifically with respect to mistakes regarding [Claimant's] employment and subsequent clarification." (Id.) In these respects, she challenges the ALJ's analysis of the evidence respecting her inpatient hospitalization in 1992 and 1995, Dr. Harden's medical records, Dr. Robertson's medical records and letters, and her past relevant work. (Id. at 6-16.)

Respecting the inpatient hospitalizations, Claimant asserts that the ALJ erred in discrediting her testimony that she was hospitalized in 1992 and 1995, for suicidal ideation because her testimony was corroborated by Dr. Robertson and Dr. Harden.[4] (Id. at 7.) Claimant also takes issue with the ALJ's statements that Dr. Robertson failed to refer to Claimant's inpatient psychiatric hospitalizations in his August 18, 2009, letter. (Id. at 7-8.) Claimant concedes that Dr. Robertson's letter did not reference her psychiatric hospitalizations and explains that Dr. Robertson had provided her with a prior statement in 2006, which contained reference to three periods of inpatient treatment. (Id.) She therefore asserts that it was unreasonable for the ALJ to assume that Dr. Robertson would have mentioned "every single fact in every single medical record." (Id. at 8.) She further asserts that the inpatient treatment notes were unavailable as part of Dr. Robertson's unavailable records. (Id.) Regarding Dr. Harden's treatment notes, Claimant asserts that the ALJ improperly found that his notes were the only evidence concurrent with her date last insured and that he improperly relied upon the fact that Dr. Harden failed to mention treatment with Dr. Robertson or the motor vehicle accident. (Id. at 8-10.)

---

[4] The undersigned notes that Claimant cites to Dr. Harden's June 10, 2002, progress report, which referenced her more recent hospitalization in 2002, not the hospitalizations in 1992 and 1995. (Tr. at 191.)

On remand, Claimant alleges that the ALJ exceeded his scope of review "when he sifted through the records in an attempt to rebut Dr. Robertson's opinion which the district court had already described as uncontradicted." (Id. at 19.) Claimant asserts that Dr. Robertson was her treating psychiatrist and that the ALJ failed to consider his opinion pursuant to 20 C.F.R. § 404.1527. (Id.) Claimant contends that the evidence establishes that she was disabled as of December 31, 1995, and therefore, that the Court should award benefits. (Id.)

In response, the Commissioner asserts that the ALJ properly found that Claimant was not disabled prior to her date last insured, December 31, 1995. (Document No. 23 at 7-13.) Respecting the ALJ's credibility assessment of Claimant and Dr. Robertson, the Commissioner contends that the ALJ's analysis was proper. (Id. at 8-11.) Although Claimant argues that it was unreasonable for Dr. Robertson to have included every facet of Claimant's treatment in his letters and statements, the Commissioner asserts that the ALJ properly analyzed the totality of Dr. Robertson's statements and opinions. (Id. at 8-9.) Nevertheless, the ALJ conducted a properly credibility assessment and fairly found that the discrepancy between Dr. Robertson's 2006 statement and 2002 admitting report that Claimant had never received inpatient hospitalization for her mental impairments. (Id.) Respecting Dr. Harden's treatment notes, the Commissioner asserts that the ALJ properly noted that his notes were the only evidence concurrent with the period on or before Claimant's date last insured. (Id. at 9.) Although there were gaps in treatment, Dr. Harden's records are the only treatment notes generated during the period at issue, which was on or before December 31, 1995, the date last insured. (Id.) The Commissioner asserts that Claimant incorrectly asserted that Dr. Harden's treatment notes failed to refer to Dr. Robertson's treatment. (Id. at 9-10.) Moreover, the Commissioner contends that it was proper for the ALJ to cite only to the record before him, which consisted of Dr. Harden's notes, and

that Claimant's "mere disagreement with the ALJ cannot be a basis for remand." (Id. at 10.) The Commissioner notes that the ALJ reasonably considered Claimant's work history and properly assigned little weight to Dr. Robertson's 2009, opinion. (Id. at 11-12.) Although Claimant contends that the ALJ should not have conducted a de novo review, the Commissioner asserts that pursuant to 20 C.F.R. § 404.983, the ALJ was permitted to consider any issue relating to Claimant's claim "whether or not they were raised in the administrative proceedings leading to the final decision." (Id. at 12.) Consequently, the Commissioner contends that the ALJ's decision should be affirmed. (Id. at 13-14.) Alternatively, rather than the Court awarding benefits, as requested by Claimant, the Commissioner contends that remand is not appropriate in this case. (Id.) The Commissioner asserts that for the Court to award benefits, "it would have to weight Dr. Robertson's August 18, 2009, letter against the other evidence of record and make a factual determination that the letter proves that Plaintiff met the Act's definition of disability during the relevant period. These are actions that are outside the scope of judicial review." (Id.)

Claimant asserts in reply that the ALJ should have considered Dr. Robertson's letters together, rather than address them separately. (Document No. 24 at 2.) She also asserts that to the extent that the ALJ continued to view the issue as a factual one, then "the ALJ had an obligation to contact Dr. Robertson directly or instruct counsel to do so in an attempt to clarify a factual issue." (Id. at 3.) Respecting Claimant's work activities, she asserts that despite ALJ Habermann having resolved all issues, ALJ McMillion reopened the issue. (Id. at 4.) Claimant therefore contends that Claimant is entitled to an award of benefits and that the Court should "accept the uncontradicted opinion of a twenty-three year treating psychiatrist and award her those benefits to which she is entitled." (Id. at 5.) Analysis.

The thrust of Claimant's argument is that in finding that she had no severe medically

determinable impairments, the ALJ erred in discounting her credibility and the credibility of Dr. Robertson. To be deemed disabled, a claimant must have an impairment or combination of impairments which is severe, meaning that it "significantly limits your physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c); 416.920(c) (2013). Basic work activities are the abilities and aptitudes necessary to do most jobs, including: physical functions such as sitting and standing; capacities for seeing, hearing and speaking; understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting. Id.; §§ 404.1521(b)(1)-(6); 416.921(b)(1)-(6). Conversely, "[a]n impairment can be considered as 'not severe' only if it is a *slight abnormality* which has such a *minimal effect* on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." Evans v. Heckler, 734 F.2d 1012, 1014 (4th Cir. 1984) (emphasis in original); see also SSR 85-28 (An impairment is considered not severe "when medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered."); SSR 96-3p (An impairment "is considered 'not severe' if it is a slight abnormality(ies) that causes no more than minimal limitation in the individual's ability to function independently, appropriately, and effectively in an age-appropriate manner."). An inconsistency between a claimant's allegations about the severity of an impairment and the treatment sought is probative of credibility. See Mickles v. Shalala, 29 F.3d 918, 930 (4th Cir. 1994). As discussed above, the determination whether a claimant has a severe impairment is made at the second step of the sequential analysis.

In his decision, the ALJ determined that Claimant suffered from anxiety, PTSD, and depressive disorder, which were medically determinable impairments, but were not severe impairments. (Tr. at 598.) In analyzing the evidence, particularly the August 2009, letter from Dr. Robertson, the ALJ conducted a credibility assessment of Claimant and found that she was not entirely credible.[5]  (Tr. at 599-605.) The ALJ also considered the evidence of Dr. Robertson and

---

[5] A two-step process is used to determine whether a claimant is disabled by pain or other symptoms. First, objective medical evidence must show the existence of a medical impairment that reasonably could be expected to produce the pain or symptoms alleged.  20 C.F.R. §§ 404.1529(b) and 416.929(b) (2013); SSR 96-7p; *See also, Craig v. Chater*, 76 F.3d 585, 594 (4th Cir. 1996).  If such an impairment is established, then the intensity and persistence of the pain or symptoms and the extent to which they affect a claimant's ability to work must be evaluated.  *Id.* at 595.  When a claimant proves the existence of a medical condition that could cause the alleged pain or symptoms, "the claimant's subjective complaints [of pain] must be considered by the Secretary, and these complaints may not be rejected merely because the severity of pain cannot be proved by objective medical evidence." *Mickles v. Shalala*, 29 F.3d 918, 919 (4th Cir. 1994). Objective medical evidence of pain should be gathered and considered, but the absence of such evidence is not determinative.  *Hyatt v. Sullivan*, 899 F.2d 329, 337 (4th Cir. 1990). A claimant's symptoms, including pain, are considered to diminish her capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical and other evidence.  20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4) (2013).   Additionally, the Regulations provide that:
> [w]e will consider all of the evidence presented, including information about your prior work record, your statements about your symptoms, evidence submitted by your treating, examining, or consulting physician or psychologist, and observations by our employees and other persons.  . . .  Factors relevant to your symptoms, such as pain, which we will consider include:
>> (i) Your daily activities;
>> (ii) The location, duration, frequency, and intensity of your pain or other symptoms.
>> (iii) Precipitating and aggravating factors;
>> (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;
>> (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;
>> (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 or 20 minutes every hour, sleeping on a board, etc.); and
>> (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3) (2013).
SSR 96-7p repeats the two-step regulatory provisions:
> First, the adjudicator must consider whether there is an underlying medically

assigned his August 2009 opinion little weight. Addressing Claimant's credibility first, the undersigned notes that the ALJ properly noted the requirements of the applicable law and Regulations with regard to assessing pain, symptoms, and credibility. (Tr. at 599.) The ALJ found at the first step of the analysis that Claimant's "medically determinable impairments could have been reasonably expected to produce the alleged symptoms." (Tr. at 601.) Thus, the ALJ made an adequate threshold

---

> determinable physical or mental impairment(s)--i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques--that could reasonably be expected to produce the individual's pain or other symptoms. * * * If there is no medically determinable physical or mental impairment(s), or if there is a medically determinable physical or mental impairment(s) but the impairment(s) could not reasonably be expected to produce the individual's pain or other symptoms, the symptoms cannot be found to affect the individual's ability to do basic work activities.
>
> Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the individual's pain or other symptoms has been shown, the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities.   For this purpose, whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record.

SSR 96-7p, 1996 WL 374186 (July 2, 1996). SSR 96-7p specifically requires consideration of the "type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms" in assessing the credibility of an individual's statements. Significantly, SSR 96-7p requires the adjudicator to engage in the credibility assessment as early as step two in the sequential analysis; i.e., the ALJ must consider the impact of the symptoms on a claimant's ability to function along with the objective medical and other evidence in determining whether the claimant's impairment is "severe" within the meaning of the Regulations.  A "severe" impairment is one which significantly limits the physical or mental ability to do basic work activities.  20 C.F.R. §§ 404.1520(c) and 416.920(c).

Craig and SSR 96-7p provide that although an ALJ may look for objective medical evidence of an underlying impairment capable of causing the type of pain alleged, the ALJ is not to reject a claimant's allegations solely because there is no objective medical evidence of the pain itself. Craig, 76 F.3d at 585, 594; SSR 96-7p ("the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record"). For example, the allegations of a person who has a condition capable of causing pain may not be rejected simply because there is no evidence of "reduced joint motion, muscle spasms, deteriorating tissues [or] redness" to corroborate the extent of the pain. Id. at 595. Nevertheless,  Craig does not prevent an ALJ from considering the lack of objective evidence of the pain or the lack of other corroborating evidence as factors in his decision. The only analysis which Craig prohibits is one in which the ALJ rejects allegations of pain solely because the pain itself is not supported by objective medical evidence.

finding and proceeded to consider the intensity and persistence of Claimant's alleged symptoms and the extent to which they affected Claimant's ability to work. (Tr. at 601-05.) At the second step of the analysis, the ALJ concluded that Claimant's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." (Tr. at 601.)

Claimant testified that she was transported from the scene of the accident to the hospital, where she remained for Wednesday and Thursday. (Tr. at 568-69.) She began seeing Dr. Robertson on Friday. (Id.) From then until the mid-1990s, Claimant saw Dr. Robertson twice a week for about two years. (Tr. at 577-78.) She then saw him at a frequency of once a month and now once every two months. (Id.) The ALJ concluded that Claimant's testimony was inconsistent with contradictory statements regarding her work history and that the descriptions of her symptoms and treatment were inconsistent with the evidence. (Tr. at 601-02.) Regarding the latter finding, the ALJ noted that although Dr. Robertson indicated that he saw Claimant every few months and attended therapy, he failed to mention any of her inpatient hospitalizations. (Tr. at 602.) The ALJ concluded that a treating physician's letter in support of a claimant's claim for disability, most likely would have mentioned "significant treatment," as alleged by Claimant, especially when he placed her in the inpatient treatment. (Id.) The ALJ also concluded that it was unreasonable for Dr. Robertson to have summarized Claimant's mental impairments, but to have excluded any reference to suicidal ideation, for which she alleged resulted in the hospitalizations in 1992 and 1995. (Id.) The ALJ also noted that Claimant's daily activities, which included attending her children's games, award ceremonies, and school events, in addition to housecleaning, talking on the telephone, and assisting some with her husband's business. (Id.) The ALJ therefore, determined that Claimant was not entirely credible.

The ALJ further assigned little weight to Dr. Robertson's August 2009, opinion. (Tr. at 603.) The ALJ noted that he reviewed the opinion "very thoroughly and closely re-evaluated all evidence

pertaining to the claimant's state before her date last insured." (Id.) Nevertheless, the ALJ concluded that the opinion was unsupported by objective evidence and contradicted the evidence prior to the date last insured. (Id.) Although Dr. Robertson did not state specifically that Claimant was disabled since 1990 or 1995, the ALJ viewed the statement most favorably to Claimant and determined that "Dr. Robertson implied that the claimant has been disabled since at least the date last insured." (Tr. at 603-04.) He noted however, that Dr. Robertson did not state in his opinion that Claimant was hospitalized in 1992 or 1995. (Tr. at 604.) The ALJ stated that it seemed "unlikely that he would summarize the various methods of the claimant's treatment, but leave out major treatments, such as hospitalizations." (Id.) The ALJ acknowledged that Dr. Robertson's treatment records prior to 2001, were damaged or lost, and accepted that "sometimes unfortunate circumstances, such as these, occur and that the claimant should not be punished to such circumstances beyond her control." Nevertheless, contrary to his own statement, the ALJ in essence "punished" Claimant for failure to obtain the records. The ALJ concluded that disability must be based on the factual evidence, and not solely on allegations. (Id.) He noted that Dr. Robertson's treatment evidence prior to the date last insured was limited and that the other evidence of record likewise was limited. (Id.) He therefore concluded that based on contemporaneous reports by Dr. Harden of Claimant's mental impairments resulting from the motor vehicle accident, Dr. Bennett's opinion, and the various statements and opinions of Dr. Robertson, the ALJ concluded that Claimant's testimony, was inconsistent with the evidence and did "not weigh in favor of granting disability" and that Dr. Robertson's 2009, statement did "little to change the evaluation of the evidence." (Id.)

The undersigned finds that the ALJ erred in assessing Claimant's credibility and the credibility of Dr. Robertson. Neither Claimant's nor Dr. Robertson's statements that Claimant was hospitalized in 1992 and 1995, for suicidal ideation, were refuted and therefore, must be accepted as true. Dr.

23

Robertson has treated Claimant in excess of twenty years and it is unreasonable for him to have remembered every nuance of her treatment nearly twenty years later. Although he failed to indicate initially that Claimant was hospitalized, he submitted a further statement to that effect. He has identified the mental impairments for which he treated Claimant, he related the causation of Claimant's mental impairments to the motor vehicle accident in 1990, and he implicitly opined that Claimant has been disabled since at least her date last insured, December 31, 1995. Dr. Harden was Claimant's general physician, and did not treat her specifically for her psychological problems, as did Dr. Robertson. Contrary to Claimant's assertions, the undersigned finds that Dr. Harden's treatment notes were the only evidence that ran concurrent with her date last insured. Although she had gaps in treatment, Dr. Harden's notes are the only evidence prior to her date last insured. Nevertheless, it is unreasonable to assume that because Claimant suffered psychological issues resulting from the motor vehicle accident, Dr. Harden should have reflected the same in his progress notes. The undersigned notes that Dr. Harden also failed to reference the fact of the motor vehicle accident in his notes prior to December 31, 1995. This failure however, did not change the fact that the accident occurred. Thus, it is clear that the evidence of record, based on Claimant's unrefuted testimony and Dr. Robertson's unchallenged statements and opinions, which corroborate each other, establishes that Claimant was hospitalized in 1992 and 1995, for suicidal ideation. The ALJ therefore clearly erred in assessing Claimant's credibility and assigning little weight to the opinions of Dr. Robertson. The undersigned finds that Claimant's testimony is credible, and that the opinions of Dr. Robertson, as a treating psychiatrist, are entitled great weight.

Removing the ALJ's flawed credibility assessments, the undersigned finds that the evidence establishes that Claimant was disabled prior to December 31, 1995, her date last insured, and is entitled to an award of benefits. In Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013), the Fourth Circuit

24

stated:

> A necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling. *See Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984). The record should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence. *Hines v. Bowen*, 872 F.2d 56, 59 (4th Cir. 1989). If the reviewing court has no way for additional investigation or explanation." *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 744, 105 S.Ct. 1598, 84 L.Ed.2d 643 (1985).

The Fourth Court noted an exception in Breeden v. Weinberger, 493 F.2d 1002, 1011-12 (4th Cir. 1974), where benefits were awarded where the "case was quite old, record had no need to be reopened, and the case had already been on appeal once before." Radford, 734 F.3d at 295. The undersigned notes that the instance case has been twice remanded for essentially the same issues. In the instant matter, the undersigned finds that the record has been developed fully, all essential factual issues have been resolved, and that the record adequately and clearly establishes Claimant's entitlement to benefits. See Morales v. Apfel, 225 F.3d 310, 320 (3d Cir. 2000). Accordingly, the undersigned recommends that the District Court remand for an award of benefits.

For the reasons set forth above, it is hereby respectfully **PROPOSED** that the District Court confirm and accept the foregoing findings and **RECOMMENDED** that the District Court **GRANT** the Plaintiff's Motion for Judgment on the Pleadings (Document No. 19.), **DENY** the Defendant's Motion for Judgment on the Pleadings (Document No. 23.), **REVERSE** the final decision of the Commissioner, **REMAND** this matter pursuant to sentence four of 42 U.S.C. 405(g) for an award of benefits, and **DISMISS** this matter from the Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable David A. Faber, Senior United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days

(filing of objections) and then three days (mailing/service) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155, 106 S.Ct. 466, 475, 88 L.Ed.2d 435 (1985), reh'g denied, 474 U.S. 1111, 106 S.Ct. 899, 88 L.Ed.2d 933 (1986); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir.), cert. denied, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.Ed.2d 352 (1984). Copies of such objections shall be served on opposing parties, Senior District Judge Faber, and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to send a copy of the same to counsel of record.

Date: February 22, 2016.

Omar J. Aboulhosn
United States Magistrate Judge